UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| MICHAEL S. GOLDBERG, LLC | ) | |
| MICHAEL S. GOLDBERG | ) | Case No. 09-23370 (ASD) |
| | ) | Case No. 09-23371 (ASD) |
| | ) | |
| Debtors | ) | Jointly Administered Under |
| | ) | Case No. 09-23370 |
| | ) | |
| | ) | |
| JAMES BERMAN, Chapter 7 Trustee for | ) | |
| MICHAEL S. GOLDBERG, LLC, et al. | ) | Adversary Proceeding |
| | ) | No. 10-2082 |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| MICHAEL S. GOLDBERG, LLC, | ) | |
| MICHAEL S. GOLDBERG, | ) | |
| EDWARD MALLEY and | ) | |
| KABLIK & LEARY, P.C. | ) | |
| | ) | |
| Defendants | ) | October 27, 2010 |
| | ) | |

**MOTION FOR ORDER IN ACCORDANCE WITH PREJUDGMENT REMEDY ORDER BY STIPULATION DIRECTING EDWARD MALLEY TO CEASE AND DESIST FROM MAKING UNNECESSARY EXPENDITURES AND TO TURN OVER SURPLUS INCOME TO THE TRUSTEE FOR ATTACHMENT**

Pursuant to the *Prejudgment Remedy Order By Stipulation* (the "PJR Stipulation/Order") [Doc. No. 50],[1] James Berman, Chapter 7 Trustee (the "Trustee") hereby moves this Honorable Court to enter an Order: (1) directing defendant, Edward Malley ("E. Malley"), to immediately cease and desist from making payment of certain purported monthly expenses that do not qualify as "Necessary Expenditures," as said term is defined in Paragraph No. 6.b of the PJR Stipulation/Order, and (2) directing E. Malley to remit to the Trustee, to be held in escrow pending resolution or adjudication of this case, the difference between E. Malley's monthly income in the amount stated in his Supplement to Financial Disclosure Statement, signed on September 30, 2010 and such expenses that Court determines are "Necessary Expenditures". In support thereof, the Trustee states as follows:

**PRELIMINARY STATEMENT**

E. Malley is no one of the most significant targets in all of the adversary proceedings commenced in this bankruptcy case. While many "investors" in the Ponzi scheme perpetuated (the " Goldberg Scheme") by Michael S. Goldberg ("Goldberg") and Michael S. Goldberg, LLC ("Goldberg, LLC"),[2] lost hundreds of thousands and, in many instances, millions of dollars, E. Malley has – by his own admission – been the recipient of more than $10 Million in false "profits" paid by the Debtors to him or for his benefit. Specifically, Mr. Malley has asserted that

---

[1] A copy of the PJR Stipulation/Order is attached hereto as Exhibit A.
[2] The Debtor and Debtor LLC are collectively referred to as the "Debtors." All of the defendants in the adversary proceeding are collectively referred to as the "Defendants."

he invested $1,871,720.77 with the Debtors, and that $12,366,000.00 was "paid by Michael S. Goldberg and/or Michael S. Goldberg, LLC to Kablik & Leary, P.C. Client Funds Account for the benefit of Edward Malley..."[3] Moreover, based upon documentary evidence provided by E. Malley and co-defendant, Kablik & Leary, P.C. ("K&L"), and deposition testimony of K&L, E. Malley generated substantial "profits" for himself by recruiting other persons and entities to invest in the Goldberg Scheme through him, and has fraudulently transferred hundreds of thousands and, perhaps, millions of dollars of his ill-gotten gains.

Now, however, E. Malley contends that he does not have assets nearly sufficient to satisfy a judgment against him. Indeed, E. Malley now claims that he lacks funds sufficient to repay even the false profits he received. Therefore, it is critical that E. Malley be enjoined from further dissipating his assets in derogation of the PJR Stipulation/Order that was specifically drafted to provide E. Malley with sufficient income "to pay personal bills that are reasonable and necessary for the health and welfare of his family," and to preclude him from "making luxury purchases or transferring and/or dissipating his assets ... or favoring other creditors, during the pendency of this case." PJR Stipulation/Order, ¶ 6.b.

I. STATEMENT OF PROCEDURAL FACTS

1. On November 18, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtors.

---

[3] The foregoing quotation was taken from Schedule A to Mr. Malley's purported disclosures to the Trustee pursuant to his obligations under the court-ordered PJR stipulation referenced below.

2. On November 24, 2009, the Court entered the Order for Relief in the Debtors' cases.

3. By Orders dated January 11, 2010, the Court confirmed the election of the Trustee as Chapter 7 Trustee in both cases.

4. On May 14, 2010 the Trustee initiated this Adversary Proceeding against E. Malley, K&L and the Debtors seeking to avoid more than $14 million in fraudulent, preferential and post-petition transfers made by the Debtors to E. Malley and K&L.

5. All of the transfers made by the Debtors to E. Malley and K&L were in furtherance of the Goldberg Scheme, i.e., E. Malley and K&L received their "profits" because the Debtors fraudulently transferred other people's money to them.

6. Contemporaneously with the filing of this Adversary Proceeding, the Trustee also sought a prejudgment remedy against E. Malley and K&L to ensure they did not further dissipate the payments they had received from the Debtors.

7. On August 25, 2010, the Trustee and E. Malley reported to the Court that they had agreed that a prejudgment remedy, in favor of the Trustee, should enter against E. Malley, in the amount of $12 Million.

8. On September 8, 2010, the Court "So Ordered and Approved" the PJR Stipulation/Order.

9. Pursuant to Paragraph No. 2 of the PJR Stipulation/Order, E. Malley was ordered to:

produce … a written statement, signed under the penalty of perjury, of … (b) a list of all material sources of income and other cash payments received by Malley (including, but not limited to: wages, distributions, dividends, disbursements and/or payments to Malley

of any type, whether or not they are recurring, collectively "Income")); (c) a list of necessary and material monthly expenditures made by Malley;

10. Paragraph Nos. 6 and 6.b of the PJR Stipulation/Order provide that in the absence of any material omissions or misstatements concerning the information provided by E. Malley,[4] as required in Paragraph No. 2 of the PJR Stipulation/Order, the Trustee would not, prior to any judgment on the Complaint, seek to attach or lien any interest in transfers from Malley Related Businesses (as that term was defined in the PJR Stipulation/Order) to Malley (or for his benefit), or from income producing assets owned individually by Malley, "but only to the extent that such transfers are necessary to pay for debts incurred by Malley, individually (and not for Malley Related Business), as set forth in the disclosures required by paragraph 2 constituting Malley's monthly expenditures (the "Necessary Expenditures") plus $ $5,000.00."

11. Within E. Malley's Cash Flow Statement, which was attached to his *Sworn Representations And Financial Disclosure Statement In Contemplation Of Settlement With James Berman, Trustee For The Chapter 7 Bankruptcy Estates Of Michael S. Goldberg And Michael S. Goldberg, LLC*, dated September 15, 2010 (the "E. Malley Initial Disclosures"), **all** of E. Malley's anticipated monthly income is derived from Malley Related Businesses or his income-producing assets.

---

[4] The Trustee believes that E. Malley has **not** complied with the requirements of Paragraph No. 2 of the PJR Stipulation/Order, but the Court need not address those issues for purposes of this motion.

12. The intention of the parties in drafting the limitation on the Trustee's ability to lien or attach E. Malley's assets was clearly and unambiguously stated in the PJR Stipulation/Order, which provides:

> The purpose of this Stipulation is to ensure that (i) Malley receives sufficient income from his business operations to pay personal bills that are reasonable and necessary for the health and welfare of his person and family but (ii) to ensure that Malley is not making luxury purchases or transferring and/or dissipating his assets or those of Malley Related Businesses, or favoring other creditors, during the pendency of this case.

PJR Stipulation/Order at ¶ 6(b). Thus, a specific reason the Trustee agreed to enter into the PJR Stipulation/Order was that E. Malley would limit his spending to only truly necessary payments such as food, utilities, home mortgage and similar payments.

13. The PJR Stipulation also called for E. Malley to provide disclosures concerning his assets, transfers, and expenditures by September 8, 2010. E. Malley failed to provide the required disclosures due under the PJR Stipulation by this date. When he finally did send the E. Malley Initial Disclosures on September 15, 2010, said disclosures were inadequate, incomplete and misleading.

14. On October 1, 2010, E. Malley sent the Trustee his proposed *Supplement to Financial Disclosure Statement* (the "E. Malley Supplement").[5] In "Sheet 1" attached to the E. Malley Supplement, E. Malley purported to lay out his Necessary Expenditures. Each of the

---

[5] Copies of the E. Malley Initial Disclosures and the E. Malley Supplement will be provided to the Court at, or prior to the hearing on the instant motion. The Trustee, now, specifically requests E. Malley's cooperation in providing copies of these documents to the Court for its review, irrespective any claims of confidentiality that E. Malley could assert.

following *monthly* expenditures, however, do not qualify as Necessary Expenditures, for the reasons set forth below, as they are not "reasonable and necessary for the health and welfare of [E. Malley's] person and family:

### A. ASC Mortgage (6,000.00)

E. Malley listed this as the monthly mortgage payment on a single family residence he owns in Bolton, CT (the "Bolton Property"), with estimated equity of only $28,000. This is not E. Malley's residence and this payment cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family." At best, E. Malley is dissipating his assets or favoring creditors other than the Debtors' estates.

### B. Donofrio Landscaping (575.00)

Either E. Malley is spending $6900 per year on landscaping for his personal residence, (which he does not own), or he is spending $6900 on landscaping for the Bolton Property and other single family, 3-family or 4-family residences that he owns. Based upon the E. Malley Initial Disclosures and the E. Malley Supplement, however, the Bolton Property is the *only* property owned by E. Malley that has any equity. Other than the Bolton Property (and a property owned by the Estate of Gerald Wright, in which E. Malley claims to own a 50% interest), each and every property listed by E. Malley has considerable *negative equity* and would not warrant a monthly disbursement of $575 for landscaping. Of course, if E. Malley is not spending $575 on landscaping for the various residential properties that he owns, and is spending $575 per month on landscaping for his residence – a house that he does not own – the payment would violate the PJR Stipulation/Order as a luxury purchase and a dissipation of his assets.

### C. Stela Cleaning (370.00)

Clearly, this is a luxury expense if E. Malley is claiming that he pays this amount, on a monthly basis, to have his residence cleaned. E. Malley did not specify the exact nature of this expense.

### D. Northwestern Life (3,000.00)

If E. Malley pays $3000 per month for life insurance, a large portion of these funds are going to pay for "whole life" insurance, i.e., a policy with a cash value savings component, as opposed to term life insurance. Essentially, E. Malley has inappropriately listed monthly

payments to a form of savings plan as a Necessary Expenditure. These policies should be converted to term insurance policies, which would give his beneficiaries the same death benefit, but would not allow E. Malley to add to his cash savings.

**E. Indymac - Sisson Ave. ($2,082.00)**

As per the E. Malley Initial Disclosures, the 3-family residence that he owns at 111-113 Sisson Avenue, Hartford, CT (the "Sisson Avenue Property"), has two mortgages and *negative equity in the amount of $95,000.* This is not his residence and this payment cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family." At best, E. Malley is dissipating his assets or favoring creditors other than the Debtors' estates.

**F. GMAC - Carole Ave. ($3,000.00)**

As per the E. Malley Initial Disclosures, the single-family residence that he owns at 44 Carole Avenue, Oak Bluffs, MA, has *negative equity in the amount of $21,000.* This is not his primary residence. Upon information and belief, it is a vacation home that E. Malley uses for himself and his family. This payment cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family." At best, E. Malley is dissipating his assets or favoring creditors other than the Debtors' estates.

**G. Litton Mortgage - Stanley St. ($2,173.00)**

As per the E. Malley Supplement, the 4-family residence that he owns at 415 Stanley Avenue, New Britain, CT, has *negative equity in the amount of $20,000.* This is not his residence and this payment cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family."

**H. Indymac - ($740.00)**

Based upon the E. Malley Initial Disclosures and the E. Malley Supplement, this is the amount paid to "Chase" on the second mortgages on the Sisson Avenue Property, which has *$95,000 negative net equity* and a 3-family residence located as 236-238 Burritt Street, New Britain, CT (the "Burritt Street Property"), which has *$124,000 negative net equity. This is another inappropriate expense which exceeds the language and clear intent of the Order.*

**I. GMAC Auto - Lease for wife's car ($998.00)**

According to the E. Malley Supplement, he is paying almost $12,000 in annual leasing payments for a vehicle that he described as "Tracy Malley car". Insofar as E. Malley's wife, Tracy Malley, has her own income (E. Malley stated, in the E. Malley Initial Disclosures, that she works as a bar manager and is also self-employed), she can pay for her own luxury automobile and this monthly payment does not qualify as a Necessary Expenditure.

**J. Amex Business Card ($8,000.00)**

Paragraph 6.b precludes the Trustee from attaching or liening transfers from Malley Related Businesses to Malley "but only to the extent that such transfers are necessary to pay for debts incurred by Malley, individually (and not for Malley Related Business),...." By definition, payments related to a "business" credit card are not allowable under the PJR Stipulation/Award, ¶ 6.b, and cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family."

**K. Various credit cards ($4,000.00)**

The PJR Stipulation/Order specifically provides E. Malley with $5,000/month for living expenses, over and above his Necessary Expenditures. Here, E. Malley is attempting to circumvent the language and intent of the PJR Stipulation/Order by attempting to include unspecified expenses within the category of Necessary Expenditures. Unspecified credit card purchases, however, were *exactly* the type of expenditures that the additional allowance of $5,000 was intended to cover.

**L. NEPM ($1,400.00)**

E. Malley failed to provide any explanation for this line item. However, if this is a cost associated with maintaining the various properties that he owns, there is no justification for this continued expense as it cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family."

**M. Oggi ($140.00)**

E. Malley failed to provide any explanation for this line item. However, if this is a cost associated with maintaining the various properties that he owns, there is no justification for this continued expense as it cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family."

**N. Kostin & Rufkiss ($500.00)**

E. Malley failed to provide any explanation for this line item. However, if this is a cost associated with maintaining the various Malley Related Businesses, it is specifically excepted from inclusion in E. Malley's list of Necessary Expenditures, as provided in PJR Stipulation/Order, ¶ 6.b.

**O. McGinleys Health Training ($300.00)**

E. Malley listed a payment of $74 per month for "LA Fitness." Clearly, adding an additional $300 per month for "health training" is a luxury expense, and the PJR Stipulation/Order specifically states that its purpose is "to ensure that Malley is not making luxury purchases." PJR Stipulation/Order, ¶ 6.b.

**P. RCZS, LLC ($7,000.00)**

RCZS, LLC is an entity that owns a private airplane and E. Malley is a 20% owner of the company. This monthly payment should be precluded because it is a payment concerning a debt owed to, or by, a Malley Related Business and is specifically excepted from inclusion in E. Malley's list of Necessary Expenditures, as provided in PJR Stipulation/Order, ¶ 6.b. More importantly, according to the E. Malley Initial Disclosures, RCZS, LLC has a negative fair market value of $400,000. This payment cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family." At best, E. Malley is dissipating his assets or favoring creditors other than the Debtors' estates. Insofar as E. Malley's co-owners in RCZS, LLC are all family members, it is clear that E. Malley has some incentive to favor RCZS, LLC over the Debtors' Estates.

**Q. Misc. ($1,500.00)**

The PJR Stipulation/Order specifically provides E. Malley with $5,000/month for living expenses, over and above his Necessary Expenditures. Here, E. Malley is attempting to circumvent the language and intent of the PJR Stipulation/Order by attempting to include unspecified expenses within the category of necessary Expenses. Unspecified "miscellaneous" expenses, however, are *exactly* the type of expenditures that the generous allowance of $5,000 was intended to cover.

**R. Laundry Express/Laundry Express II "shortfall" ($3,000.00)**

By definition, payments related to cover a shortfall in his laundry businesses are not allowable under the PJR Stipulation/Award, ¶ 6.b, and cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family."

**S. Gerald Wright Estate ($1,200.00)**

No explanation was given as to why this amount was listed on E. Malley's list of alleged Necessary Expenditures. It is not clear whether E. Malley owes money to the Gerald Wright Estate, or is paying expenses associated with the estate. In either case, however, this expense cannot be justified as "reasonable and necessary for the health and welfare of [E. Malley's] person and family."

15. The sum of the aforementioned monthly expenses, as listed by E. Malley is $45,978.00.

16. Because the above expenses are precluded by the express and language and intent of the PJR Stipulation/Order, any further payment of these expenses by Malley should be prohibited by the Court.

17. Furthermore, as the funds used by E. Malley to pay each of the aforementioned items came to E. Malley from Malley-related businesses and properties that he owns, these funds are lienable by the Trustee under the PJR Stipulation/Order and E. Malley should be directed to pay to the Trustee the sum of $45,978.00 each month during the pendency of this case. The Trustee will hold said funds in an interest bearing escrow account until resolution of this matter.

18. E. Malley has already claimed he has insufficient assets to repay even a small fraction of his substantial debt to the Debtors' estates. Permitting E. Malley to maintain an exorbitant lifestyle and to favor creditors of his businesses over the over the victims of the Goldberg Scheme is a further affront to those victims who have already been involuntarily funding E. Malley's lifestyle for years.

                                           THE TRUSTEE
                                           JAMES BERMAN

By:   /s/ Lawrence S. Grossman
       Lawrence S. Grossman, Esq. (ct15790)
       ZEISLER & ZEISLER, P.C.
       558 Clinton Avenue
       Bridgeport, Connecticut 06605
       Telephone: 203-368-4234
       Facsimile: 203-367-9678
       Email: lgrossman@zeislaw.com